# Orphans' Court Procedural Rules Committee Report

**Rescission and Replacement of Pennsylvania Orphans' Court Rules 1.1 through 13.3 and Rule 17, with Amendment of Rules 14.1 through 16.12**

Given that the last substantial revision to the Supreme Court Orphans' Court Rules occurred in November 1975, with an effective date of January 1, 1976, then-Chief Justice Ralph J. Cappy of the Supreme Court of Pennsylvania approved a proposal by the Orphans' Court Procedural Rules Committee (the "Committee") to review and elaborate upon the skeletal collection of prior rules governing statewide practice and procedure. Publicly announcing this project on October 17, 2007, Chief Justice Cappy explained that the "intent here is to simplify the current system and standardize governing procedures so everyone has a clearer idea of what is expected and better outcomes are realized for the citizens of Pennsylvania."

The Committee thereafter published a proposal for new Orphans' Court Rules on April 13, 2013 in the Pennsylvania Bulletin, 43 Pa.B. 2010, with a comment period that expired on June 13, 2013. The Committee received numerous comments which were thoroughly reviewed and vetted. Where necessary or deemed appropriate the Committee revised the published proposal based upon the comments received. The Committee then submitted a revised draft of these proposed new Orphans' Court Rules to the Pennsylvania Supreme Court (the "Court") with a recommendation for their adoption. The Court adopted the following rules by Order dated December 1, 2015, with an effective date of September 1, 2016.


## Introduction

It is the Committee's intent and belief that the recently adopted Supreme Court Orphans' Court Rules (the "O.C. Rules" or "Rules") will standardize procedures throughout the Commonwealth for presenting and having disputes adjudicated in the orphans' court divisions of the courts of common pleas and will promote uniformity in the content of pleadings. These new statewide O.C. Rules are intended to accomplish the following three objectives:

> (1) promote a standard statewide practice and reduce variations caused by reliance on local practice;
>
> (2) provide clear procedures to practitioners and judges throughout the state, especially those in counties without dedicated orphans' court divisions; and
>
> (3) harmonize orphans' court proceedings with general civil practice to the extent possible.

The Committee is aware that, with respect to the adjudication and confirmation of accounts, Title 20 (the Probate, Estates and Fiduciaries Code) distinguishes between counties having a separate orphans' court division and those counties having no separate orphans' court division.  20 Pa. C.S. §§ 3511, 3512.  The Committee analyzed these statutory provisions to determine whether this distinction required or warranted differing procedures for the filing of Accounts, the need to have accompanying petitions for adjudication/statements of proposed distribution filed with Accounts, and the procedures for providing notice to interested parties.  In the end, the Committee recommended that a trust or estate beneficiary in a smaller county is entitled to the same notice, information and protection as a trust or estate beneficiary in a larger county with a separate orphans' court division.  Consequently, these new O.C. Rules do not differentiate between judicial districts with and without a separate orphans' court division; but rather, these new Rules ensure that best procedural practices are mandated and followed throughout the Commonwealth.  To the extent that uniform statewide procedures embodied in these O.C. Rules  might be viewed as conflicting with the statutory provisions of 20 Pa. C.S. §§ 3511 and 3512, the Rules include a cross-reference to  Pa.R.C.P. No. 133, which suspends all statutes addressing procedural aspects to the extent that such statutes are inconsistent with procedural rules.

The Committee also carefully considered which rules of civil procedure to cross-reference in these Rules, which rules of civil procedural to adopt and restate within the text of the Rules, and which rules of civil procedure not to incorporate because of irrelevancy or undue burdens.  For example, the rules of civil procedure regarding discovery have not been incorporated herein, but rather the conduct of discovery is left to the local orphans' court, with a proviso defaulting to the rules of civil procedure only if not otherwise provided for by a local rule.  In addition, where appropriate, the pertinent rules of civil procedure have been narrowly tailored, such as in Orphans' Court Rule 2.8, limiting the grounds upon which preliminary objections may be raised against the objections filed to an Account.

The new O.C. Rules reflect an attempt to strike a  balance between increasing the number and breadth of procedural rules so that all parties throughout the Commonwealth are operating with known procedures while not unduly burdening these same participants with additional requirements.  Having a standardized, detailed roadmap to orphans' court proceedings hopefully will enable practitioners to operate more efficiently, which in turn will improve the presentation of matters before the bench. In counties without separate, dedicated orphans' court divisions, these O.C. Rules will address many areas that were not covered in the skeletal collection of prior rules. Having the same established method operate in all sixty judicial districts will assist the appellate courts when a matter is appealed.  The appellate courts  will be able to more readily determine if there were any procedural defects in the proceeding below, and if

so, whether these defects affected substantive rights.  In the end, these developments will benefit litigants and the public at large.


## **Organization**

The new rules are divided into sections addressing, *inter alia*, introductory matters and definitions, the filing and audit of Accounts, the procedures for initiating litigation by citation and petition, pre-hearing and post-hearing procedures, and rules for practice before the Registers of Wills.  In brief summary,

- Chapter I contains introductory rules which consolidate and expand upon prior O.C. Rule 1 and prior O.C. Rule 2.

- Chapter II contains rules and procedures specific to the filing and auditing of Accounts and the resolution of issues and disputes through the audit or confirmation process.  This Chapter encompasses and adds to the procedure previously found in prior O.C. Rule 6, prior O.C. Rule 9, and prior O.C. Rule 13.

- Chapter III sets forth rules and procedures concerning the resolution of issues and disputes through citations and notice petitions, which modifies and expands upon some of the procedures contained previously in prior O.C. Rule 3 and prior O.C. Rule 5.

- Chapter IV addresses general formatting rules, service upon individuals and entities who are acting in a representative capacity, service upon the Office of the Attorney General, the docketing and service of court orders, and the implementation of electronic filing.  This Chapter relocates and amplifies upon procedures previously found in prior O.C. Rule 3 and prior O.C. Rule 5.

- Chapter V sets forth rules addressing specific petitions and for the most part contains rules that merely have been relocated from prior O.C. Rule 12, without substantial revisions.

- Chapter VI is being reserved for future use.

- Chapter VII provides rules relating to pre-hearing and hearing procedures, which includes prior O.C. Rule 3.6 and several new rules borrowed from civil practice.

- Chapter VIII provides new post-hearing procedures which dispense with former O.C. Rules 7.1 and 7.2.

- Chapter IX contains the rules previously found as part of prior O.C. Rule 8 regarding auditors and masters.

- Chapter X sets forth rules relating to practice before the Register of Wills, relocates and amends prior O.C. Rule 5.6 and prior O.C. Rule 6.12, and provides additional new rules.

The next three sequential Chapters (*i.e.*, Chapters XI, XII, and XIII) have been reserved for future use, thereby allowing the guardianship rules, adoption rules and Abortion Control Act rules to remain with their present rule number prefixes of 14, 15, and 16, respectively.

In these O.C. Rules, there are instances where the new rule is substantially identical to its former counterpart and merely has been relocated to a new Chapter based upon the revised structure of these new Rules. (For example, Rules governing Specific Types of Petitions are moved from prior O.C. Rule 12 to Chapter V.) For this reason, following each O.C. Rule is a note indicating whether the rule derives from a prior O.C. Rule, either in total or with modifications, or whether the rule derives from a rule of civil procedure. The Committee has included these notes because it is believed that knowing the origins of a rule will help practitioners and jurists understand the purposes and effect of the rule, thereby aiding in a more proper implementation of the rule. Also, this information is intended to assist local courts and county bar committees in reviewing their local rules to determine the future placement of a current local rule that they wish to retain.

## Local Rules

Many local rules promulgated before December 1, 2015 under previously existing O.C. Rules 1 to 13 and 17 will now be obsolete. Consequently, Orphans' Court Rule 1.5, governing the adoption and dissemination of local rules, provides that all existing local rules, except for local rules on guardianships, adoptions, and the Abortion Control Act, will be vacated as of September 1, 2016.

In addition, Orphans' Court Rule 1.5 requires courts to submit any proposed new local rule to the Committee for review and vetting prior to the local rule's promulgation and effective date. The Committee will review and analyze each proposed new local rule only insofar as to determine whether the proposed local rule is inconsistent with a Supreme Court Orphans' Court Rule. Rule 1.5 is modeled after its counterpart rule of criminal procedure. *See* Pa.R.Crim.P. 105.

Because under subparagraph (e) of new Rule 1.5, it is a prerequisite for the Committee to review and accept each proposed new local rule in advance of its promulgation, local courts must send all proposed new local rules to the Committee by June 1, 2016 so that the Committee has sufficient time to vet the proposed new local rules and send appropriate notices to the local courts before the sunset date of

September 1, 2016.  The Supreme Court has set forth these dates in its Order of December 1, 2015 re: Review and Vacatur of Local Orphans' Court Rules.

If proposed local rules are submitted to the Committee by June 1, 2016, the Committee will review the proposed local rules to ensure that the proposal is not inconsistent with any current existing Supreme Court O.C. Rule and, absent unforeseen circumstances, the Committee will issue notice to the local court before September 1, 2016 as to whether the local rule may be adopted and promulgated.  After June 1, 2016, local courts should continue to submit proposed new local rules to the Committee for review and vetting as required by subparagraph (e) of new Orphans' Court Rule 1.5.  However, with respect to proposed local rules submitted for Committee review after June 1, 2016, the Committee does not guarantee that it will be able to respond to the local court prior to September 1, 2016, when all currently existing local rules in Chapters 1 through 13 and 17 are vacated.

It is the Committee's belief that a review and redrafting of local rules will not prove to be difficult or time consuming for local courts and local county rule committees.  First, the scope and breadth of the new Supreme Court O.C. Rules is so extensive and detailed that only a few areas will need to be covered by local rules.  One of the purposes of the extensive set of new O.C. Rules is to eliminate the need for and presence of numerous and lengthy local orphans' court rules.  Second, each new Supreme Court O.C. Rule has a note indicating the origins of that rule.  It is anticipated that local county courts and county rule committees will be able to review the current local rules and determine whether to keep, redraft, or eliminate such local rules.  The Committee hopes that the project of promulgating new local orphans' court rules will be one of primarily restructuring and reducing, and not one of redrafting and adding.

Subparagraph (d) of Rule 1.5 requires each local rule to correspond to its Supreme Court O.C. Rule counterpart.  This subparagraph does not forbid use of a letter before or after the number of the local rule.  Finally, while the Committee appreciates the place and importance of local rules to effective and efficient judicial administration, the Committee nevertheless expresses reservations about allowing a local court to dismiss a pleading or grant or deny relief based upon non-compliance with a local rule.  Notwithstanding, subparagraph (h) of Rule 1.5 provides that a party can be sanctioned for repeated failures to comply with a local rule.


**Highlighting specific rules and changes in practice**

In a change from prior practice, Rule 1.8 and Rule 10.1 mandate exclusive use of Supreme Court-promulgated statewide forms.  Because a goal of adopting these extensive and thorough statewide O.C. Rules is to implement best practices across the Commonwealth, the Supreme Court-promulgated forms must be used and filed exclusively.  Uniformity and standardized practice across the Commonwealth will occur

only when all practitioners are required to use, and all Registers and Clerks are required to accept, only Supreme Court-promulgated forms.

The Supreme Court-promulgated form that accompanies the filing of an Account as provided in Rule 2.4 is titled "Petition For Adjudication/Statement of Proposed Distribution." This title, albeit verbose, accounts for the differences between counties with and without separate orphans' court divisions: in counties with separate orphans' court divisions, a petition for adjudication is presented when the Account is called for audit, whereas, in counties without separate orphans' court divisions, the Account is filed along with a statement of proposed distribution requesting confirmation and approval of the proposed distribution. By including both nomenclatures in the title of this form, the Committee means to indicate to practitioners and the bench that the form should be used and should accompany an Account filed in all counties regardless of whether the judicial district has a separate orphans' court division.

Chapter II provides a complete and comprehensive set of rules governing Accounts and the disposition of disputes through the Account process. This Chapter establishes standardized, statewide procedures for (i) preparing and formatting Accounts; (ii) filing Accounts and the accompanying petitions for adjudication/statements of proposed distribution; (iii) providing notice to interested parties that an Account and a distribution proposal has been filed with the court; (iv) raising and pursuing objections by interested parties to the Account or distribution proposal; and (v) obtaining court approval confirming or adjudicating the Account and authorizing distribution as proposed or as modified.

Following a practice currently in place in many counties, subparagraph (a) of Rule 2.4 requires the petition for adjudication/statement of proposed distribution to be filed with the Account. The benefits of filing the petition for adjudication/statement of proposed distribution simultaneously with the Account are as follows:

> (1) interested parties are able to obtain a copy and review the petition for adjudication/statement of proposed distribution in advance so that they can then determine whether they have objections to the information and proposals in this pleading;

> (2) the accountant or his or her counsel is compelled at the time of the Account's filing to review the governing instrument and determine if there are interpretation questions or potential disputes about distribution; and

> (3) the court, if it is so inclined, can review the petition or statement in advance of the audit date or the last day for filing objections and notify the accountant or his or her counsel of deficiencies in the pleading or the absence of documents required to be attached.

6

Next, Rule 2.5 aims to standardized procedures for who is to be notified of an Account's filing, when and how such notice is to be given, and what must be contained or enclosed with the notice. Starting first with the interested parties to be notified of an Account's filing, the following new subparagraphs are worth noting. Subparagraph (b) of Rule 2.5 requires notice of the Account's filing to be sent to both counsel and the interested individual or entity even when such interested party is represented by counsel. Remembering that estates may take years to administer and trusts may continue for generations, it is commonplace for counsel to have represented an interested party in the filing of a prior Account or the resolution of an earlier dispute. Given that the prior Account was adjudicated or the prior dispute resolved, the attorney-client relationship may have terminated by the time the subject Account is filed. If the individual or entity does not receive notice of the Account's filing, then such individual or entity may remain uninformed and lose rights to review the instant Account and pursue new objections. Second, subparagraph (c) of Rule 2.5 provides that if the proposed distribution is to an estate of which a charity is a beneficiary or to a trust of which a charity is a "qualified beneficiary" as such term is defined in 20 Pa. C.S. § 7703, then notice of the Account's filing also must be sent to the Attorney General. Similarly, if the proposed distribution is to an estate or trust and one of the accountants stating the Account is a fiduciary of the receiving estate or trust, then notice of the Account's filing must be provided to the beneficiaries of the recipient estate or trust.

With respect to when and how notice is to be given, subparagraph (d) of Rule 2.5 requires written notice to be sent 20 days prior to the audit date in counties with separate orphans' court divisions or 20 days prior to the date when objections must be filed in counties without separate orphans' court divisions. If an audit is continued or the date for filing objections is extended, subparagraph (e) requires the mailing of additional notice to all parties who received the initial mailing, not simply those who may have already filed objections.

Lastly, in regards to the contents of the notice, subparagraph (h) of Rule 2.5 requires the position of the accountant to be stated as to (i) any known dispute; (ii) a question regarding a document's interpretation; and (iii) its understanding of the nature of each contested or unpaid claim. While the Committee is aware that some fiduciaries are reluctant to take a stance, preferring instead to be a "stakeholder," it is imperative for the fiduciary as the accountant to expressly state a position. Without a stated position, the beneficiary and/or creditor receiving notice of the Account's filing cannot know whether to pursue objections because such beneficiary and/or creditor is not made aware of what relief is being requested of the court.

O.C. Rule 2.7 regarding objections expands upon prior O.C. Rule 6.10. In crafting this more detailed rule, the Committee reviewed the local rules of many counties and selected those provisions embodying best practices and explaining most

clearly and comprehensively how objections should be pleaded and verified, and the time by which objections should be filed with the court.

With the repeal of the equity rules on January 1, 2004, the authority to file and the procedures for resolving preliminary objections to Account objections vanished, resulting in a medley of judicial responses that ranged from refusing to permit preliminary objections to relying upon the rules of civil procedure. O.C. Rule 2.8 rectifies this vacuum and is derived in part from Pa.R.C.P. No. 1028. With that said, Rule 2.8 differs from its civil counterpart by limiting permissible preliminary objections to only two grounds: (i) lack of jurisdiction over the subject matter, and (ii) lack of standing. By limiting preliminary objections to only these two grounds in the Account context, the Committee balanced the need for a procedure by which the court quickly can address and perhaps dismiss objections to an Account with concern from practitioners and the bench not to allow "scorched earth" litigation tactics that increase the costs and delay resolution. Specifically, a court's lack of jurisdiction over the estate or trust or a party's lack of standing to pursue objections is paramount to an orderly and expedient adjudication or confirmation of an Account. On the other hand, the exclusion of scandalous or impertinent matter is not essential to the orderly disposition of objections, but rather serves only to delay the proceeding and cause substantial fees to be incurred by the *res* of the trust or estate or by the objecting party. Lack of jurisdiction over the person would never be a proper objection because the adjudication or confirmation of an Account is an *in rem* proceeding, not an *in personam* proceeding. Lack of specificity is not an impediment to resolving objections and thus a preliminary objection on these grounds would not aid the court. In most instances, the objecting beneficiary does not have the means to provide more specificity to its objections; the assets and much of the relevant information concerning these assets is in the possession of the fiduciary who prepared the Account.

If a dispute is not brought before the orphans' court through the filing of an Account and the raising of objections, the other method by which to proceed in orphans' court is through the filing of a petition. The O.C. Rules contained in Chapter III are intended to have petition practice in orphans' court resemble as closely as possible petition practice in the other civil divisions. In fact, many of the Rules in Chapter III are derived from a particular rule of civil procedure as indicated by the notes appearing after each Rule in this Chapter.

Chapter V sets forth rules governing specific petitions. In all but one instance, these Rules are derived from rules contained in prior O.C. Rule 12. The one exception is O.C. Rule 5.1 governing declaratory petitions, which is based upon a particular local court rule. In the Committee's opinion, the prevalence of declaratory judgment actions in orphans' court warrants a specific rule governing these petitions.

Chapter VIII abolishes the long-standing tradition of Exception practice in orphans' court. The benefits and reasons for filing Exceptions are now historical. In a

prior time, an *en banc* panel of orphans' court judges heard the Exceptions and determined whether the underlying order, decision, or adjudication should be vacated or amended. In today's practice, the jurist issuing the underlying opinion or order frequently is the only jurist considering the Exceptions. The practical effect is that Exceptions are considered and resolved today in much the same way that motions for reconsideration are considered and resolved, *i.e.*, by the judge who was the trier of fact.

For this reason, there is no reason to have different appellate tracks for orphans' court matters and civil matters. Parties, practitioners, and jurists at both the lower court and appellate level benefit if the orphans' court division employs the same procedures as the civil division for purposes of having the trial judge reconsider the underlying decision and for pursuing the appeal from any underlying order or opinion. Thus, in the accompanying new Rules, Rule 8.1 eliminates and abolishes Exceptions practice. Rule 8.2 establishes procedures for filing motions for reconsideration. Because this is a new regime in orphans' court, the last clause of subparagraph (a) of Rule 8.2 attempts to make clear that the filing of a motion for reconsideration does not toll the thirty (30) day period for filing an appeal unless, before the expiration of those thirty (30) days, the lower court issues an order granting reconsideration. Lastly, in keeping with prior Exception practice, subparagraph (c) of Rule 8.2 prohibits motions for reconsideration in involuntary termination proceedings and adoption matters, which is consistent with the provisions of children's fast track appeals found in Pa.R.A.P. 904(f) and 1925(a)(2).

Lastly, the Committee believes the Rules in Chapter X strike the appropriate balance between keeping practice before the Register accessible to *pro se* individuals who cannot or do not wish to retain counsel and having uniform, statewide rules to ensure an orderly administration of quasi-judicial proceedings before the Register. These Rules, particularly Rule 10.3, establish uniform, predictable, and acceptable protocols for hearings conducted before the Register. In response to comments and concerns about the published proposal, the Committee did not recommend that all evidentiary hearings be recorded or transcribed or that the party initiating the hearing bear the costs of such recording and transcribing. Instead, subparagraph (a) of Rule 10.3 requires evidentiary hearings before the Register to be recorded or transcribed only when directed by the Register or requested by an interested party and the cost of this service is to be allocated among the parties as the Register directs. On the other hand, despite criticism, subparagraph (c) of this Rule, as did its counterpart in the published proposal, requires all evidentiary hearings before the Register to be conducted in accordance with the Pennsylvania Rules of Evidence. Justice is delayed and rendered ever more costly if the Registers are not required to adhere to the Pennsylvania Rules of Evidence, because on appeal to the orphans' court, the orphans' court will enforce and abide by the Pennsylvania Rules of Evidence. As a result, hearsay, unauthenticated documents, and unsubstantiated allegations admitted in the Register's hearing no longer will be admissible, which could result in the orphans' court reversing the decision of the Register. In the Committee's opinion, it is better for all

interested parties if the inadmissible evidence never is introduced and considered at the initial hearing before the Register.

Before concluding, the Committee wishes to extend both its gratitude and congratulations to all who have served on this Committee since 2007 and those who were specially consulted on this project or reviewed earlier permeations. The Committee is indebted to its present chairperson, John F. Meck, Esq., for steadily guiding this project to completion and to prior chairperson, the Honorable Calvin S. ("Pete") Drayer, Jr., for his vision in beginning this project. The Committee also thanks its prior chairpersons, Mary Jane Barrett, Esq. and Margaret Gallagher Thompson, Esq., who were instrumental in faithfully maneuvering this project forward.